IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Transcontinental Insurance Company and | ) | |
| Valley Forge Insurance Company, | ) | |
| | ) | |
| Plaintiffs, | ) | C/A No. 2:05-2594 |
| | ) | |
| vs. | ) | |
| | ) | **ORDER and OPINION** |
| MAJ Enterprises, Inc.; Selective Insurance | ) | |
| Company of South Carolina; and | ) | |
| Auto-Owners Insurance Company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.    BACKGROUND

Plaintiffs Transcontinental Insurance Company ("Transcontinental") and Valley

Forge Insurance Company ("Valley Forge") (collectively, "CNA") seek a declaratory

judgment clarifying their obligations under liability polices insuring defendant MAJ

Enterprises, Inc. ("MAJ").  Defendants Selective Insurance Company of South Carolina

("Selective") and Auto-Owners Insurance Company ("Auto-Owners") also issued

policies on MAJ.  This claim arises out of MAJ's alleged defective construction of

claimant Kirkland's house in Hilton Head, South Carolina.  The Kirkland suit generally

alleges the home was defectively built and the exterior insulation was faulty, defective

and/or improperly applied.  The complaint alleges that the Kirklands contracted to buy

the house on October 9, 1994, purchased the home on January 18, 1995, and discovered

the latent defects via an inspection on July 5 and 6, 2000.

The various policies' coverage periods overlap throughout the 1990s:

a.      Transcontinental's policies provide coverage from February 17, 1992 to

February 17, 1993, and from February 17, 1993 to February 17, 1994;

b.    Valley Forge's policies provide coverage from February 17, 1994 to

February 17, 1995, and from February 17, 1995 to October 24, 1995;

c.    Auto-Owners' policies provide coverage from February 17, 1996 to

February 17, 1997, and February 17, 1997 to February 17, 1998;

d.    Selective's policies provide coverage from January 14, 1998 to January

14, 1999, and January 14, 1999 to January 14, 2000; and

e.    Auto-Owners' policies provides coverage from January 14, 2000 to

January 14, 2001, and January 18, 2001 to January 18, 2002.

Both CNA and Auto-Owners agree that each is obligated to provide a defense and

both have contributed to MAJ's defense in varying amounts.  CNA filed this action on

September 7, 2005, seeking three declarations regarding MAJ's coverage:

a.    A declaration that neither Transcontinental nor Valley Forge have

coverage obligations under the policies.  CNA advances seventeen reasons

why MAJ is not entitled to coverage under the CNA policies.  (See Pl.'s

compl. at 6 - 10.)

b.    A declaration that CNA is entitled to a money judgment against MAJ for

unjust enrichment.  CNA seeks reimbursement for past and future costs

incurred in defense of MAJ.

c.    A declaration that Selective and Auto-Owners have a duty to defend and

indemnify MAJ, and awarding CNA a money judgment against Selective

and/or Auto-Owners for any uncovered costs CNA has incurred in MAJ's

defense.  Alternatively, CNA requests an allocation between the covered

and uncovered costs among the various insurers.

Auto-Owners has filed a summary judgment motion as to CNA's claim for

contribution from Auto-Owners for CNA's uncovered costs incurred in MAJ's defense.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when, after considering the full evidentiary

record, there are no genuine issues of material fact.  Fed. R. Civ. P. 56(c).  When the

party moving for summary judgment does not bear the ultimate burden of persuasion at

trial, the burden for summary judgment may be discharged by "pointing out to the court

that there is an absence of evidence to support the nonmoving party's case." Celotex

Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Evidence should be viewed in the light most

favorable to the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255

(1986).  However, a "mere scintilla" of evidence will not preclude summary judgment.

The court's inquiry is "not whether there is literally no evidence, but whether there is any

[evidence] upon which a jury could properly . . . find a verdict for the party" resisting

summary judgment.  Id. at 251.

## III.     ANALYSIS

CNA contends that the Kirklands could not have sustained any damage until

January 2005, thus triggering eight years of possible coverage (January 1995 - May 17,

2002).  During that time, only two of the CNA policies are potentially triggered, while

two Selective and four Auto-Owners policies are possible incurred.  CNA contends Auto-

Owners should be paying more than the 33% of MAJ's costs that CNA contends Auto-

Owners is presently providing.  Rather, CNA argues Auto-Owners should pay 50% of costs and fees.  CNA contends that Auto-Owners is providing a minimal amount towards MAJ's defense, and is therefore unjustly enriched at CNA's expense.

Auto-Owners contends that Sloan Construction Co. v. Central National Insurance Co., 269 S.C. 183, 236 S.E.2d 818 (1977) precludes CNA's attempt to recoup money from other MAJ insurers.  In Sloan, the insured held policies with Liberty and Central, respectively.  Liberty undertook Sloan's defense, while Central refused to provide any defense.  Liberty loaned money to Sloan to pay attorneys' fees and costs, repayable only if Sloan collected the amount from a third party.  Sloan then initiated suit against Central for the attorneys' fees and costs.  The parties stipulated that both policies afforded Sloan a defense, and that Central breached its obligation under the policy.  Ultimately, the court denied Sloan's effort to collect from Central:

> The duty to defend is personal to each insurer.  The obligation is several and the insurer is not entitled to divide the duty nor require contribution from another absent a specific contractual right.  When Sloan was sued, it had the right to look to both Liberty and Central or to either of them for protection.  When Central disclaimed coverage, Sloan demanded full protection from Liberty.  When Liberty undertook the defense of the . . . action, it was doing no more than it was obligated to do under the terms of its contract with Sloan.  The fact that Central also had a duty to defend was irrelevant to the rights and duties existing between Liberty and Sloan by reason of their insurance contract.  Central's refusal to defend Sloan did not affect Liberty's obligations to Sloan, and when Liberty undertook the defense it was acting not for Central but for its insured, Sloan.
> Each insurer contracted to defend, at its own expense, any suit within the terms of its policy.  Liberty's expenses in defending Sloan were incurred in the fulfillment of its own obligation to its insured.
> . . . .
> . . . The duty to defend is personal to both insurers; neither is entitled to divide the duty.
> . . . .
> . . . [B]y defending, Liberty was doing no more than it was

4

> obligated to do under its insurance contract with Sloan.  Under general
> principles of contract law no right to recovery exists in such a situation.

Sloan, 269 S.C. at 187-88, 236 S.E.2d at 820-21.  CNA claims Sloan is distinguishable

because unlike Central, Auto-Owners has not denied its duty to defend and has provided

a defense.  Rather, CNA contends Auto-Owners has accepted the defense but is not

paying its fair share.  CNA contends Sloan is limited to circumstances where the second

insurer denies coverage, and cites to Sloan's holding: "We hold where two companies

insure the identical risk and both policies provide for furnishing the insured with a

defense, neither company, absent a contractual relationship, can require contribution

from the other for the expenses of the defense where one denies liability and refuses to

defend."  Id. at 189, 236 S.E.2d at 820.  Other language in the opinion bolster CNA's

interpretation.  The court noted that the inequities of one insurer bearing the entire cost of

defending the insured can be obviated by changing the insurance contract or by the

obligee incurring a legal obligation to pay and seeking recovery on a pro-rata basis.  Id.

This observation suggests the court contemplated a situation where the second insurer

incurs no cost at all.

     No South Carolina court has construed Sloan in this exact setting.[1]  CNA is

correct that the strict holding of Sloan renders it inapplicable to the circumstance at bar.

While the rationale behind Sloan's conclusion supports Auto-Owners' interpretation, the

---

[1] Courts in other jurisdictions have interpreted Sloan broadly and in accordance with Auto-Owners' reading.  See Barton & Ludwig, Inc. v. Fidelity & Deposit Co., 570 F. Supp. 1470 (N.D. Ga. 1983); Federated Mut. Ins. Co. v. Penn. Nat. Mut. Ins. Co., 480 F. Supp. 599 (E.D. Tenn. 1979).  Commentary cites to Sloan for the same broad interpretation.  See 2 Allan D. Windt, Insurance Claims and Disputes §10:3 (4th ed.).

court's holding references instances where the second insurer denies coverage.  However, Sloan's outcome does not depend on the issue of whether the second insurer contributes to the defense.  The reasoning behind Sloan focuses on the fact that each insurer is contractually bound to provide a defense and cannot divide that duty.  Even if the second insurer contributes to the defense, each insurer's contractual duty remains personal, separate and indivisible.  The fact that Auto-Owners provided a defense does not distinguish Sloan's rationale from the case at bar.  That fact is not significant to the reasoning behind the decision.  If Sloan prohibited contribution from an insurer who disavowed all obligations to fund the defense, it is illogical to conclude Sloan would permit contribution when the second insured does fund a portion of the defense.

Moreover, the court repeatedly emphasized that Liberty was obligated to provide a defense to Sloan, and therefore was doing what was required by its policy.  Similarly, CNA is required to provide a defense, regardless of Auto-Owners' actions.  Further, Sloan noted that Liberty incurred no damages resulting from Central's refusal to participate since Liberty was obligated to provide a defense.  The same reasoning applies to CNA's claim of damages and unjust enrichment.  CNA is obligated to provide a defense regardless of Auto-Owners' actions.

CNA also contends Sloan is distinguishable because parties in that case had stipulated to the relevant policy language.  Coverage in the present action is disputed, and CNA is unaware of Auto-Owners' policy provisions.  This fact is a distinction without a difference, and does not alter Sloan's reasoning or application.

Finally, CNA maintains summary judgment is improper because no discovery has

6

taken place.  This is irrelevant, as the <u>Sloan</u> inquiry is one of law, not fact.  If the <u>Sloan</u>

reasoning applies, then CNA's request is barred.  Discovery has no bearing on <u>Sloan</u>'s

application to the controversy between CNA and Auto-Owners.

Auto-Owners interprets CNA's motion in opposition to summary judgment as a

Rule 56(f) motion to extend time for discovery, and argues that CNA has not satisfied the

requirements for an extension under that rule.  Alternatively, Auto-Owners states that if

the court views CNA's brief as a response to summary judgment, then its "memo in

opposition to plaintiff's rule 56(f) motion" should be considered as the reply.  CNA's

brief is a memorandum in opposition to summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, it is therefore **ORDERED** that defendant Auto-Owners'

motion for summary judgment as to plaintiffs' request for contribution from Auto-Owners

be **GRANTED**.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 19, 2005**
**Charleston, South Carolina**

7